EDWARD S. STOKES, Respondent, *v.* GRAHAMS POLLEY, Appellant.

1. EVIDENCE — WHEN ADMISSIBLE ALTHOUGH NOT PLEADED. Where promissory notes are executed by the maker pursuant to the terms of a written agreement for the sale of stock of a corporation, which was the consideration for the notes, and which agreement bound him to deliver them to the payee, and the former delivers them to a third person, and the defense in an action for damages for non-delivery of two of the notes is that the delivery to the third person was by plaintiff's direction, and defendant has testified to such direction, although not pleaded, evidence is admissible of a parol agreement between the plaintiff and such third person that the latter should receive the notes in suit as indemnity for an undertaking by him and another as sureties for plaintiff and also to show the extent of that liability and how plaintiff's sale of the stock without some resulting indemnity would increase the risk assumed by the sureties, since it is a circumstance corroborative of the evidence supporting the real defense.

2. WHEN PAROL EVIDENCE NOT AN ATTEMPT TO VARY WRITING. Where the written agreement provided that certain of the notes covered

thereby should be deposited by the plaintiff with a trust company to indemnify the third person and others as sureties upon an undertaking in plaintiff's behalf, but left him in full control of the remaining notes, including those in suit, and they are delivered to such third person, evidence of such parol agreement is not an attempt to vary the written agreement by parol evidence.

3. FACTS INSUFFICIENT TO TAKE CASE FROM JURY. Where the notes were delivered to such third person under the claim that the delivery was by plaintiff's direction, the facts that an alteration made in them as a correction was made without plaintiff's consent and for that reason they were returned to the defendant who replaced them by new notes correctly drawn, and that after the first delivery and before such replacement the alleged authority for delivery to the third person was revoked by the plaintiff, are not sufficient to justify the court in taking from the jury the issue of fact whether the original delivery was by plaintiff's authority and before the notice of its revocation.

*Stokes* v. *Polley*, 30 App. Div. 550, reversed.

(Argued June 22, 1900; decided October 2, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1898, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David McClure* for appellant. It was error to hold that a revocation of the agency was effected by the substitution of two new notes for those which were destroyed. (*People* v. *N. R. S. R. Co.*, 121 N. Y. 617; 1 Am. & Eng. Ency. of Law, 1218; *Hunt* v. *Rousmanier*, 8 Wheat. 174.) It was error to deny the defendant's motions to go to the jury and for a new trial, and to direct a verdict for the plaintiff. (*Cagger* v. *Lansing*, 64 N. Y. 427; *Corning* v. *T. I. & N. Factory*, 44 N. Y. 594; *Gildersleeve* v. *Landon*, 73 N. Y. 609; *Kavanagh* v. *Wilson*, 70 N. Y. 179; *Munoz* v. *Wilson*, 111 N. Y. 300; *Dean* v. *M. E. R. Co.*, 119 N. Y. 550.)

*Charles E. Hughes* for respondent. The court properly excluded evidence of the pretended agreement with James D.

Leary. (*Hunt* v. *Rousmanier*, 8 Wheat. 205 ; 1 Am. & Eng. Ency. of Law, 1217, 1218 ; Abb. Tr. Br. 753, § 954; *Smith* v. *Hall*, 67 N. Y. 48; *Saunders* v. *Chamberlain*, 13 Hun, 570 ; *Russell* v. *Clapp*, 7 Barb. 482; *Jackson* v. *Whedon*, 1 E. D. Smith, 141 ; *Spooner* v. *D., L. & W. R. R. Co.*, 115 N. Y. 30 ; *Thomas* v. *Scutt*, 127 N. Y. 133 ; *Eighmie* v. *Taylor*, 98 N. Y. 288 ; *Marsh* v. *McNair*, 99 N. Y. 174; *Mott* v. *Richtmyer*, 57 N. Y. 49.)    The court properly directed a verdict for the plaintiff. (*Blade* v. *Noland*, 12 Wend. 173 ; *Arrison* v. *Harmstaed*, 2 Penn. St. 191; Taylor on Ev. § 116.)

Landon, J.    The defendant excepted to the denial of his request to go to the jury, and to the direction of a verdict for the plaintiff; also to the exclusion of evidence offered by him. The questions of law thus presented are before us for review.

The controversy is over two notes of $15,000 each which the defendant agreed to deliver to the plaintiff, but which he in fact delivered to James D. Leary, and the main issue upon the trial was whether the plaintiff had authorized and directed such delivery, or, if he had done so, whether he recalled or countermanded the direction before the defendant actually delivered the notes to Leary.

The written agreement between the plaintiff and the defendant, to which James D. Leary, Daniel J. Leary and R. T. McDonald were also parties, required the defendant to pay to the plaintiff $25,000 in cash, and the further sum of $115,000 in seven notes to be made by the defendant and guaranteed by the Learys and McDonald upon plaintiff's delivery to the defendant of 1,300 shares of the capital stock of the Hoffman House.    This agreement was made and bore date September 27, 1897.    The plaintiff delivered the shares of stock to the defendant September 28, 1897.

The complaint alleges that the plaintiff had then already received the $25,000 from the defendant, but that the defendant had not made or delivered any of the notes to the plaintiff, but did thereafter deliver to him, first, one note for

$30,000, and next, the four other notes aggregating $55,000, but failed and refused to deliver to him the two notes, one at six months and one at eight months, each for $15,000, and hence the plaintiff asks judgment for $30,000 and interest.

The defendant's answer is that "it was understood and agreed at or about the time when the shares of stock were delivered as set forth in the complaint, that all the notes referred to therein should be delivered to James D. Leary, referred to in said complaint as the representative and agent of the plaintiff, and the defendant was directed to and did deliver them to said Leary by the authority and direction and with the knowledge of the plaintiff;" and also alleges that "said delivery was made to the plaintiff through his representative and agent, James D. Leary, who received them from the defendant by the direction and authority of the plaintiff."

The written contract and the seven notes were prepared at the Hoffman House on the 25th of September, 1897, at a meeting of all the parties to the contract except the defendant, who was not present. The parties, except the defendant, then signed the contract, and the two Learys and McDonald indorsed the notes. The Learys retained the possession of the notes and contract, and on September 27th presented the contract to the defendant and he then signed it.

The 1,300 shares of stock, the subject of the sale, were then held by the Chemical Bank as collateral to a loan of $30,000 made by the bank to the plaintiff. On the next day the bank delivered the stock to the plaintiff upon Mr. J. D. Leary's promise to replace it with the $30,000 note, one of the seven notes mentioned in the written contract. The plaintiff then delivered the stock to the defendant on Mr. J. D. Leary's promise to plaintiff to procure the notes. The notes were not signed that day because they were in the custody of David J. Leary, who was not present, but the note for $30,000 was signed by the defendant the next morning, September 29th, at the Hoffman House. The defendant testified that he received it from James D. Leary, signed it, then

handed it to Mr. Leary, who handed it to the plaintiff. The defendant further testified that the plaintiff then and there told him to give the balance of the notes to Mr. Leary, and that the plaintiff also told him at the Chemical Bank to give the balance of the notes to Mr. Leary when they were signed, and that the plaintiff there told Mr. Leary to keep the notes. The plaintiff did not contradict this testimony, and it was corroborated by other witnesses. The four notes, aggregating $55,000, were subsequently signed and deposited with the Knickerbocker Trust Company.

The defendant offered evidence tending to prove an agreement between the plaintiff and Leary by which Leary was to receive these two notes from the defendant and hold them as indemnity against his and D. J. Leary's liability as sureties for the plaintiff as receiver of the Hoffman House corporation and also as sureties in an action against the corporation itself, and also to show the extent of that liability and how the plaintiff's sale of this stock without some resulting indemnity would increase the risk assumed by the Learys. The evidence was excluded.

The Appellate Division sustained the exclusion because such a defense was not pleaded and because it was an attempt to vary by parol a written instrument under seal.

I do not think either ground tenable. If such an agreement existed it would account for the direction alleged by the defendant to have been given by the plaintiff to him to deliver the notes to Mr. Leary and thus add credibility to the defendant's testimony that the plaintiff did give him such a direction. If the plaintiff and Leary had made such an agreement, then the plaintiff's direction to the defendant was an obvious consequence of it.

The court, in excluding evidence of the agreement between Stokes and Leary by which Leary was to receive the two notes, excluded the evidence tending to prove the agency of Leary to receive them, as between Leary and the plaintiff. Clearly the defendant would make a stronger case if, in addition to proving the agency as between plaintiff and himself,

he should prove it as between the plaintiff and Leary. It was not necessary to plead the plaintiff's separate agreement with Leary, since it was not a defense, but it was a circumstance corroborative of the evidence which supported the real defense, namely, that defendant delivered the notes to Mr. Leary as the plaintiff told him to do. It was not necessary to plead the corroborative evidence.

The argument to support a variance of the written agreement by the parol evidence will not bear scrutiny. It is true that the written agreement provides that the plaintiff shall deposit $55,000 of the notes with the Knickerbocker Trust Company to indemnify the two Learys and McDonald against their liability as sureties upon the plaintiff's appeal bond in an action then pending upon appeal against him, but this agreement is in consideration of their guaranteeing all the notes — seven of them — aggregating $115,000. No doubt this guaranty was important, and it was also important to be able to show that it was made upon sufficient consideration, and, therefore, it was proper to insert it in the agreement. This written agreement left the plaintiff free to dispose of the other notes and of the cash part of the consideration of his sale of stock to whom he pleased and in any way he pleased, and if, before the written agreement or after it, he provided for such disposition, he simply provided for dealing with his own after it should become such ; that is to say, he appointed Leary to receive the notes and notified the defendant, thus making defendant's delivery to Leary delivery to himself. Such provision for appointment and disposition is not at variance with the written agreement, but is in furtherance of it.

Another phase of the case needs consideration. If we credit the defendant's evidence, after the plaintiff had directed the defendant to deliver the notes to Leary, and the defendant had done so, the plaintiff changed his position, and demanded the notes of the defendant. The notes were drawn to the order of the plaintiff but not indorsed by him, nor did they bear interest. While in Leary's hands the two notes were

altered without the plaintiff's consent, by substituting the word "bearer" for "order," and by adding the words "with interest." Mr. Leary apparently becoming apprehensive that this alteration was unauthorized, requested the defendant to give him new notes, and handed him the original notes. The defendant destroyed the notes and gave Mr. Leary new notes in their stead. This was after the plaintiff had demanded the original notes of defendant.

The trial court held that as the defendant thus had the original notes in his possession after the plaintiff had signified his revocation of whatever direction the plaintiff had previously given him to deliver the same to Mr. Leary, it was the defendant's duty to deliver them to the plaintiff instead of destroying them. However this might be if no interest in the notes had accrued to Leary by virtue of some contract between him and the plaintiff, under which he held possession of them in aid of such interest, yet if Leary had acquired some interest in the notes with the right to their possession in protection of his interest, then the defendant had no right upon the mere receipt of the notes for the purpose of repairing a wrong or mistake, to violate or confiscate Leary's interest in and right to the possession of the notes. Such an act would be a breach of trust, of good faith and of defendant's duty as temporary bailee of the notes for a special purpose. If Leary's claim was not well founded, it may be gravely doubted whether it was defendant's duty to take advantage — apparently dishonorable — of such a circumstance to advance the plaintiff's title to the notes. If Leary's claim to the notes was well founded, the defendant did the plaintiff no legal wrong. If well founded, then the plaintiff should have been permitted to show that he did the defendant no wrong by showing that as between Leary and the plaintiff, Leary was entitled to the notes. As the quality of the defendant's act in destroying the original notes depended upon the rights of the plaintiff and Leary as between each other, the defendant was prejudiced when he was not permitted to show such rights.

The trial court assumed, as a matter of law, that since the

original notes bore no interest, the notes thus made should not be considered as in performance of the contract. This view and the substitution by defendant of new notes at the request of Leary seem to have led to the exclusion of much of the evidence offered by the defendant, and to the refusal to submit the case to the jury. That the $115,000 to be evidenced by the notes should bear interest is clear from the written agreement, but the agreement is not explicit that the notes should express it. Indeed, when the plaintiff received the note for $30,000 the absence of the words "with interest" was remarked at the bank where the plaintiff substituted it as collateral in place of the stock he sold to the defendant, and the defendant thereupon gave to the plaintiff his check for the interest.

The complaint assumes that these two original notes were proper in form and were such as the contract specified. The plaintiff's cause of action is founded upon their non-delivery to himself in person, not upon any defect in the notes themselves. The amount they represented bore interest under the the contract, and it does not appear to be important whether the notes expressed interest or not ; the complaint alleges that they did ; they were prepared by the plaintiff for execution by the defendant, and the inference is strong that they were satisfactory to the plaintiff. If there was any question whether the two notes were such as the contract called for under the plaintiff's practical construction of it, upon which the defendant acted, it was a question of fact for the jury, and not of law for the court.

We think the court erred in excluding the evidence alluded to and in not submitting the question to the jury upon the evidence given, whether the defendant delivered the notes to Leary pursuant to plaintiff's direction and before notice of its countermand.

The judgment should be reversed, new trial granted, costs to abide the event.

PARKER, Ch. J. (dissenting). The carefully prepared opinion, in which all the court concur, fully justifies, it seems to

me, the conclusion of the Appellate Division that the trial court rightly directed a verdict in favor of the plaintiff. By an agreement in writing the defendant agreed to give, for a consideration which he admits he has received, two promissory notes of fifteen thousand dollars each, as well as other notes and money. Plaintiff, not having received the two notes, brought this action to recover the amount for which they were to be given, with interest. The answer in nowise challenges the validity of the contract or that under it the plaintiff was entitled to receive the two notes, nor is it claimed therein that the notes were ever given to the plaintiff personally, but it alleges that the notes were made and delivered to one James D. Leary " as the representative and agent of the plaintiff, and the defendant was directed to and did deliver them to said Leary by the authority and direction and with the knowledge of the plaintiff." The only issue tendered by the pleadings, therefore, was whether the delivery of the notes to Leary was a delivery to the plaintiff's representative and agent at his request, and the only question which the trial court had to decide, when requested to direct a verdict in favor of the plaintiff, was whether the defendant had established that he had delivered the two notes now in existence to Leary as the agent of the plaintiff and at his request, or had presented such evidence as entitled him to have that question submitted to the jury.

A complete mastery of the material facts makes the question one very easy of correct decision. There were three parties to the agreement, the plaintiff being the party of the first part, the defendant the party of the second part and James D. Leary, Daniel J. Leary and R. T. McDonald the parties of the third part. The subject of the agreement was Hoffman House stock of the par value of one hundred and thirty thousand dollars, then owned by the plaintiff, for which it was provided in the contract that the defendant should pay, upon delivery, one hundred and forty thousand dollars, as follows : Twenty-five thousand in cash and one hundred and fifteen thousand in seven notes to be made and delivered by the

defendant; one for thirty thousand dollars, payable in four months; five for fifteen thousand dollars each, payable in five, six, seven, eight and nine months respectively, and one for ten thousand dollars, payable in ten months; all to bear six per cent interest. The parties of the third part were sureties for the plaintiff in some litigation then pending in the courts, and the agreement provided that they should guarantee the payment of the seven notes in consideration of a deposit of fifty-five thousand dollars thereof with the Knickerbocker Trust Company, protecting them from loss by reason of such suretyship. The agreement was signed by all the parties except the defendant, on the evening of September twenty-fifth, 1897; and James D. Leary, who, it now appears, was jointly interested with the defendant Polley and with McDonald in the purchase of the stock, took the agreement to obtain Polley's signature, which was affixed on the following Monday, the twenty-seventh. The next day the plaintiff and the defendant, with James D. Leary, met at the Chemical Bank for the purpose of carrying out the agreement. That bank held the certificates of stock as security for a loan to the plaintiff of thirty thousand dollars. The plaintiff asked for the seven notes, which the agreement provided he should have upon the delivery of the stock. Mr. Leary said that " his son had them on the speedway and he had forgotten to have them there with him." No other reason was suggested for their non-delivery, and Mr. Leary promised that he would get the notes for the plaintiff. The defendant and Leary were so anxious to have the transaction closed that the bank finally agreed to release the stock, upon Leary's guaranty that the thirty-thousand-dollar note should be delivered to the bank the next morning, and the plaintiff consented to a delivery of the stock upon being given a writing by defendant acknowledging the receipt of thirteen hundred shares of stock in pursuance of the agreement and the personal assurance of Leary that he would get the notes for him. It was during this conversation at the bank that the defendant claims that the plaintiff directed him. after signing the notes, which it seems he had not yet done,

to "give them to Mr. Leary," a statement wholly inconsistent
with the plaintiff's attitude throughout all that interview,
according even to the defendant Polley's testimony. He testi-
fies : " When we met at the Chemical Bank Mr. Stokes asked
for these seven notes. * * * Q. When Mr. Stokes asked
Mr. James Leary for those notes did Mr. James Leary give
any reason for not delivering them except that his son had
them ? A. No other reason. That is the only reason. Mr.
Stokes was being asked to surrender the stock then. I
don't recollect when Mr. Leary said his son had them, that
he said how soon he would get them for Mr. Stokes. He
told him that his son had them, he would get them. I don't
recollect how soon he said he would get them. *When Mr.
Leary told Mr. Stokes he would get him the notes Mr.
Stokes then handed the stock over to me.* I gave my receipt
for it. * * * I won't say that he said he would get
them for Mr. Stokes; I can't say that. He promised to get
them." The plaintiff's demand for the notes, his insistence
upon a receipt from the defendant showing that the stock had
been delivered in pursuance of the agreement, before he would
surrender it, and the promise of Leary that he would get him
the notes, undoubtedly present the situation as it was in fact,
and as it was understood by all of the parties; yet it may be
conceded that the defendant might have been entitled to have
the jury pass on the credibility of his further statement, that in
the same conversation the plaintiff told him to give the notes
to Leary and that he did so, were it not for the fact that such
notes were afterward returned to defendant, who destroyed
them, and then gave to Leary new notes. Before this hap-
pened, however, the defendant concedes that the plaintiff had
told him that Mr. Leary had no business to have the notes,
and that plaintiff had demanded them of defendant again and
again. The defendant also testifies that " He (Mr. Stokes)
threatened suit anyway, because I didn't give him the notes.
And after he threatened suit because I would not give him
the notes those notes came back into my possession, and I
destroyed them. * * * After that I knew he was threat-

ening to sue me because I didn't give them to him. And I knew that when I destroyed the notes." So, if it could be held that the defendant's statement that the plaintiff told him to give the notes to Leary, borne down as it is by the written agreement, the defendant's other testimony and all of the facts and circumstances surrounding the transaction, presents a question of fact in that regard, still we find that the notes, which he claims to have delivered in pursuance of that request, were delivered to and destroyed by him after the termination of the alleged agency and with knowledge thereof.

That transaction is one of controlling importance, and the defendant's version of it is as follows: "I mean to say that the two notes in question here, which I signed the day after the meeting at the Chemical Bank, are still in Mr. Leary's hands. I suppose they are in his hands. \* \* \* Q. The two notes in question here? A. They are not in existence now. I saw them destroyed. I was present when they were destroyed. \* \* \* After I made them I destroyed them. \* \* \* Q. When you destroyed those notes where did it take place? A. At Mr. Leary's house. Nobody asked me to destroy them. I destroyed them myself. Mr. Leary gave them to me. He did not tell me to destroy them. I destroyed them myself and tore them up myself. No talk, no reason, no statement of the reason. \* \* \* The notes were given to me, and I tore them up. When Mr. Leary gave them to me he did not tell me to destroy them. I destroyed them. I said I would destroy them. They were wrong; there was a mistake. Q. Who told you there was a mistake? A. I see it myself they were wrong. *They gave them to me because they were wrong.* \* \* \* I don't know whether Mr. Leary or who made them wrong. Mr. Leary never told me anything about it. \* \* \* Q. Is it your recollection that any papers had been served upon you at the time that occurred? A. I don't think there were. I would not say positively." Elsewhere in the testimony it appears that the alterations which the defendant discovered in the original notes consisted of the addition of the words " with interest," and also the words " or

bearer," so as to make the notes payable to bearer. It is significant that these alterations were made while the notes were in the possession of Leary, and, taken in connection with the other steps in the transaction, suggest that, at the meeting in the Chemical Bank, Leary was plotting to secure to the defendant, McDonald and himself possession of the stock, without carrying out in its entirety the contract that he had signed three days before; but in some way it was discovered that the last step in the transaction, by which the notes were made payable to bearer, was something that might be visited with serious legal consequences, and hence the meeting at Leary's house and their destruction by the defendant, because, as he said, they were wrong and had become so after leaving his possession. At that moment the defendant knew that if the plaintiff ever had authorized him to hand the notes to Leary, that authority had been withdrawn; if he once believed that Leary was the plaintiff's agent for the purpose of receiving the notes, he then knew that such agency no longer existed, for the defendant Polley testifies: "And after he threatened suit, because I would not give him the notes, those notes came back into my possession and I destroyed them." Most men would have felt it their duty, at least, to refuse to make new notes until it had been determined whether the plaintiff or Leary was entitled to the notes that Leary contracted to indorse for plaintiff's benefit, and especially so where, as in this case, the party claiming the notes had offered him indemnity, but the defendant Polley preferred to take other action, without either moral or legal right, and he did make new notes and deliver them to Leary. It is urged in his behalf that, having delivered the original notes to Leary, the latter was entitled to the notes issued to take the place of those destroyed. One answer to that proposition is, that the original notes, so-called, did not conform to the contract, in that they were not drawn "with interest," and, therefore, there never was such a delivery to Leary or any one else as satisfied the requirements of the contract. It follows that, when the plaintiff demanded the notes of the defendant and threatened

suit to get possession of them, the defendant had not at all satisfied the contract, even though it were the fact that Leary had been the plaintiff's agent for the purpose of receiving the notes, for defendant had not delivered such notes as the contract called for, and, hence, had made no delivery thereunder, and, therefore, could not ignore the revocation of the agency by the plaintiff and his demand that the delivery be made to him personally, as was his right under the contract. It would have been error, therefore, for the court to submit the question of agency to the jury, for even if it be conceded that the plaintiff did make Leary his agent, yet, before there was such a delivery as the contract called for, the agency was terminated and the defendant notified of it, so that whether there was originally an agency ceased to be a matter of any importance in the disposition of the motion for the direction of a verdict.

. Again, if it be conceded for the purposes of the argument that the notes given to Leary were in conformity with the contract, and the defendant subsequently, because of the wrongful alteration of the notes, or for any other reason, desired to repossess the notes in order that he might destroy them, the fact remains that when he had accomplished that result the plaintiff did not have, either in person or by proxy, the notes which the contract called for and which under it he was entitled to receive. In other words, when the defendant had destroyed the notes he and the plaintiff stood in exactly the same position as though the old notes had never existed, and the defendant's duty remained undischarged. The agency of Leary, if it ever existed, had been terminated, as the defendant well knew, and it was then his duty, under the contract, to comply with the demand of the plaintiff by delivering to him personally the new notes. .

It follows that the court did not err in directing a verdict. It is suggested, however, that error was committed in rejecting "evidence tending to prove an agreement between the plaintiff and Leary by which Leary was to receive these two notes from the defendant and hold them as indemnity against

his and D. J. Leary's liability as sureties for the plaintiff as receiver of the Hoffman House Corporation, and also as sureties in an action against the corporation itself, and also to show the extent of that liability and how the plaintiff's sale of this stock, without some resulting indemnity, would increase the risk assumed by the Learys." The Appellate Division sustained the view of the trial court that this evidence was not admissible under the pleadings. No such agreement was pleaded; the answer contained no suggestion that Leary had acquired any interest in the notes by contract or otherwise, but instead that, in receiving the notes, he acted for the plaintiff " as his representative and agent." The defendant was permitted to testify fully as to what was said to him by the plaintiff regarding the disposition of the notes, and no evidence was excluded tending to show that the plaintiff authorized him to deliver the notes to Leary as his representative. The evidence excluded was offered for the purpose of contradicting the defense pleaded and establishing a new agreement between the plaintiff and Leary, conflicting with the terms of the written agreement, in that it provided for a further indemnity than the one specifically mentioned in the writing as the consideration for the indorsement of all of the notes by the Learys, by which new agreement, sought to be established, Leary was to receive the notes in his own behalf and interest. That the evidence was not admissible for that purpose is substantially conceded; but it is said that had the defendant been permitted to show the existence of an agreement between Leary and the plaintiff, by which the latter was to have the notes, that fact might have been regarded by the jury as giving credit to the testimony of the defendant to the effect that he was told to give the notes to Leary as the plaintiff's agent and representative. On the contrary, the evidence would seem to establish that the notes were to be received by Leary on his own account instead of the account of plaintiff. Conceding, however, for the purposes of the argument, that had the evidence been received it would have tended to corroborate, and, to some extent, give credit to the testimony of

the defendant, still this judgment should not be reversed on that account; for the error, if error it was, was harmless, as the admission of the evidence could not have affected the result. As has already been shown, there was sufficient evidence to go to the jury on the question of the agency of Leary to receive the notes and the authority of the defendant to give them to him. The direction of a verdict, notwithstanding that fact, is supported on the ground that such agency was revoked and the defendant notified of it before the notes now in existence were delivered. If the views expressed in relation thereto be sound, it follows that the defendant was not injured by the exclusion of evidence tending to corroborate, in some degree, the witness who testified positively that he was authorized to give the notes to Leary as plaintiff's agent.

The judgment should be affirmed, with costs.

O'BRIEN, BARTLETT and CULLEN, JJ., concur with LANDON, J., for reversal; VANN and WERNER, JJ., concur with PARKER, Ch. J., for affirmance.

Judgment reversed, etc.